The next case on the call of the docket is Agenda Number 19, Number 128012, Monroe Sheckler v. Auto-Owners Insurance Company. The appellee in this case will be splitting their time. And so therefore, Mr. John Robertson will argue for 15 minutes, followed by Mike Earlworth. Is that correct? Correct. Okay. All right. Krista Hay-Gumbener, are you prepared for your arguments? I am. You may proceed. May I switch off the covering? Yes, you take it off. Apologies. Good morning, and may it please the Court. I'm Krista Gumbiner, and I represent the appellant, Auto-Owners Insurance Company, in this matter. The undisputed question before this Court today is whether auto-owners had a duty to defend. That's it. That is the issue before this Court, is the duty to defend. And that duty to defend comes up in the context of a claim that Monroe and Dorothy Sheckler, a negligence claim that was brought against them. I do not believe that the facts are in dispute, so I will not belabor them. If this Court has any questions about the facts themselves, I'm happy to answer them. Otherwise, I'll jump right into the legal issues that we are all grappling with today. I want to first just talk about the duty to defend and the context in which that duty to defend might arise. This Court and the lower courts throughout Illinois have established over decades of jurisprudence that the duty to defend is purely a question of law that is decided by comparing the language of the policy with the allegations in the pleadings. This is the black-letter law of Illinois. Can I just – I just want to – Absolutely. One real quick question. If the tenants are treated as co-insurers, there would be a duty to defend, would there not? Well, it depends on which policy or coverage you're speaking about. If you are talking about the third-party liability, the landlord liability policy, and if the tenants are treated as co-insureds under that coverage part, which auto owners does not – I mean, there's no basis for that, there might potentially be a duty to defend, although here there is an express exclusion for the damages sought. That is to say there is an express exclusion in the liability coverage part for damage to property that is owned, rented, or occupied by an insured. And that's very common in liability policies because a liability policy or coverage part is just with regard to your liability to a third party. And I'll get into that in a second, but it's your liability to a third party. It's not with regard to damage that you yourself incur to your own property. And that's a big distinction here. Thank you. As the court in Hacker v. Shelter, which is 388 Illinois Appellate 3D 386 said, under Illinois law, to determine whether an insurer has a duty to defend, the court must look to the allegations of the complaint and compare those to the relevant provisions of the policy. And to construe the policy, this court, and our primary objective is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. And that cites to many, many other cases. But I also want to note right here, and again, I'm still talking about just what the duty to defend is. This court has consistently held that the duty to defend is not a function of equity at all, but rather a question of law governed, again, by the plain terms of the policy. And that is in Zurich Insurance Company 118, Illinois 2D 23. And the direct quote is, the insurer's duty to defend, it's insured, arises from the undertaking to defend as stated in the contract of insurance. And then back to Hacker, which expressly was discussing the Dix Court, which we'll discuss in a minute, the Dix Court's analysis of the equities of subrogation is not relevant in determining an insurance company's duty to defend. So I wanted to start there with the duty to defend, which is before the court today. It's a question of law. It is not a question of equity. And we have to look at the language of the policy with regard to the duty to defend. Now I want to talk about the policies and the coverage parts themselves. The insurance policy and all of the coverage parts, the separate coverage and distinct coverage parts that auto owners wrote for Ronald McIntosh, who as you all know is not actually part of this anymore, but he and his wife Kim were the named insureds. That's located in the record at C128 to 175. And I want to first note with regard to that, that what we're also not dealing with is a question of ambiguity. Nobody has said that the policy is ambiguous. So again, we're back to the plain language of the policy. Now there are multiple coverages in that sort of package policy, if you will. And the two that we're going to talk about today and that are relevant here is a first party property coverage part that we're going to generally refer and we refer to in the briefs as the dwelling sort of policy, the dwelling coverage part. And that is at C158 to 172. And then this separate landlord liability coverage part, which we've called the third party landlord liability policy, located at 145 to 147. Counsel, there seemed to be this dispute about whether or not there was more than one policy. Does it matter? It extremely matters, Your Honor. Yes, it matters. It's not just a matter of different types of coverage in one policy? Well, Your Honor, I would actually say that yes. And let me explain that in a little bit more detail. It is very typical to have, I think, what is generally referred to as a sort of package policy, which lists out multiple coverages. The rights and obligations of the insurance company and the insured are different under each coverage. And so to answer your question directly, Your Honor, yes, this is really an issue of the rights and obligations of the parties under each distinct coverage that is in sort of the overarching singular policy that was written by auto owners. So with regard to the property or the dwelling, the fire insurance policy, that is a first-party policy. This means that the coverage grant itself covers or reimburses the insureds for accidental direct physical loss to the property itself. And I will note that this is a limitation that the Shecklers themselves seemingly recognize, because they actually allege that they tendered defense to auto owners for liability because they did not have any other liability insurance coverage to defend them. In other words, there is a distinction between the liability policy and this first party. And just to go into a little bit more detail on that, the first-party policy or the first-party coverage means that the insured is getting reimbursed by the insurance company for a loss that the insured itself experienced. And, of course, the classic example is really property damage, homeowners insurance, we all have it, hail damage, wind damage, fire loss, all examples of direct physical loss to our property that we go and we make a first-party claim to the insurance company and we say, this piece of property is damaged, you reimburse me for that. By contrast, third-party liability coverage covers a claim from a third-party, and the language of that policy or coverage part is that any insured, it covers third-party claims that any insured becomes legally obligated to pay because of or arising out of bodily injury or property damage. In other words, the type of insurance that comes into play in the classic slip-and-fall case. It is liability to that third-party, not any first-party claims such as damage to your own property. Your Honor, the dwelling policy just didn't include at all third-party liability policy. Absolutely. That is correct, Your Honor, in the dwelling policy. That is absolutely correct. And so that is where I would like to start, is with the dwelling policy and the arguments made by the Sheckler's under the dwelling policy. And those arguments are twofold. Both that they are coinsured under the policy, which we dispute, but separately and perhaps more incredulously that there is a third-party defense or duty to defend owed under that first-party policy. And I'll start with that. This is a first-party policy, if you look at C-158 to 172, that provides, again, the coverage for only the direct physical loss. There is no coverage in the dwelling policy at all or in that first-party coverage for any claims brought by anyone against the insured. In other words, if Mr. McIntosh, the actual named insured on that policy, were sued by a third party, there would be no coverage for him under the first-party dwelling part. So there would be no question that auto owners would not have a duty to defend under that first-party part of Mr. McIntosh. Despite the clear language in the policy and the clear understanding of what first-party coverage is, the third district still found that auto owners owed the Sheckler's a duty to defend under that first-party policy. Again, not to repeat myself, but the interpretation of the insurance policy is a legal question. And courts, while they might be able to interpret or have more of a discussion about who might be an insured under the policy, they absolutely cannot rewrite the actual coverage part of the policy. They cannot rewrite the terms of the policy. And so the result of what the third district did is that either the Sheckler's as tenants and even potentially implied co-insureds, though we dispute that, are entitled to greater coverage than Mr. McIntosh, the named insured, or that Mr. McIntosh and all landlords are now afforded coverage of third-party liability claims under a first-party property coverage, and neither outcome is palatable. I'll note here that it is somewhat, well, it's absolutely immaterial that the personal liability that the Sheckler's were being sued for was their own negligence. And if it is material to the court, I'm happy to discuss. But it is really legally meaningless whether persons A, third-party liability claims are for breach of contract, a legal claim, unjust enrichment, an insurance policy, includes coverage for that, and a duty to defend. Q And I understand you're focusing on the policy language. When we start going down this road with the Dix case, how do we start getting into all this language about the lease? A That's correct. Q And one of the paths, they outline three different paths that some of the jurisdictions go down. One is absent an express agreement to the contrary. The tenant is treated as a co-insured all the time, based on, among other things, paying the rent, because the rent pays for the insurance policy. What does that, how does that factor into your analysis as far as, you know, how we're supposed to look at this? A Your Honor, I think that actually should be flipped, though, that presumption. The presumption is actually that they're not co-insured. The presumption, even in Dix. Q I know that's the presumption. And even in this case, it was still, I'm sorry, in Dix, it was, they still laid out the presumption. But I'm just talking about the, I think it was the dissent, Heitel's dissent talked about the three different paths that jurisdictions go down. One path, not Illinois, but the one path is, you know, we basically say they're co-insured no matter what. Again, we're looking at the language of the lease to determine whether or not there's some indication of that. A Sure. So a couple of things. I want to first address the idea that they're always co-insured. I think that is extremely problematic, and I think it goes in the face of what this court and Illinois jurisprudence is. And that's because when a landlord goes out to get insurance, that insurance company has risks, right, that they assess, that they determine. And that insurance company has risks that they assess. And so if, in fact, it is the case that any tenant is a co-insured on any policy that the landlord gets, that means that now the landlord, that has to then be factored into every single premium that is paid by the landlord to the insurance company. And so it is not Illinois law, and I think a lot of reasons that other jurisdictions have rejected that is simply because it is up to the parties. Now the parties can expressly say in the lease if they want the insured or if they want the tenant to be a co-insured under different policies or if there are certain liabilities that the tenant either assumes or rejects and goes back to the landlord. But the idea that as a general rule, tenants are always co-insureds is simply incongruent with the way that policies are issued and the risk assessed by insurance companies, as well as really parties' right to contract, right, the parties' right to assume certain liabilities, rights and obligations under the contract. So I think we have that. And that, absolutely. Absolutely not, Your Honor. That is not what we are asking this Court to do. Quite frankly, Your Honor, I don't think this Court has to even deal with dicks. Now, Ms. Governor, I just wanted to get some things cleared up. The auto owners brought a subrogation action against workmen. That is correct. Not the shecklers. That is correct. And in light of that action, the jury rendered the verdict for workmen in favor, right? That is correct. So under these facts, the contribution action against the shecklers is moot. That is absolutely correct. Is that not right? I was going to say, is that the shecklers had nothing to contribute to? That is absolutely correct, Your Honor. And I believe that that is something that should have been considered. However, what the Third District did was, even though this issue was moot, and even though, one, auto owners had already won at the trial court, on appeal, that sort of was set aside, the fact that it was moot. And the Third District still rendered an opinion that, in effect, and in application, said that the issue was moot. That the duty to defend is no longer a question of law that must be decided by the plain language of the policy, and rather, the duty to defend is an equitable question, which, again, flies in the face of everything this Court has rendered. And to tie it to that, Justice Burke mentioned Dick's. So does that distinguish, does Dick's distinguish it by that? On its fairs? I'm sorry. Because this case is moot. Sure. Why should auto owners be required to defend the shecklers under a policy that clearly excludes the tenants? So isn't this against the longstanding principles? And is Dick's distinguishable on these fairs? Dick's is extremely distinguishable, Your Honor. And that was sort of the point that I wanted to address. This Court does not have to overturn Dick's. One, I would say that the Dick's Court itself, in its own right, is not subject to the Illinois law. And so, as Justice Burke said, this is a limited holding to this particular set of facts. As Justice Burke and I just discussed, Dick's actually set forth what is the Illinois law. It actually applied longstanding Illinois law. And it simply said that if, in fact, someone is a co-insured, then the insurance company cannot directly subrogate against them. And as Your Honor pointed out, that's not what we have here at all. So I wonder, does Dick's support your position? You mentioned the fact that, you know, Dick's basically holds that the tenants are liable for damages that they cause unless, and then there's an exception that's outlined in Dick's, and then in Dick's they determined that that was not the intention of the parties from looking at the language and the agreement of the parties. So does Dick's support your position? We take the position that, yes, we don't have a problem with Dick's, Your Honor, because Dick's is a very, it's applied only to the specific facts of that case. We have a very different lease than was in Dick's. And the other sort of nugget in Dick's is that they, the tenants paid, their rents went to the premiums. Again, these premiums were paid long before the tenants, or by long, I mean at least five months before the tenants actually even made their first rent payment. So, Your Honor, yes. Again, we don't need this court to overturn Dick's. We're not asking this court to overturn Dick's. What we're asking this court to do is recognize Dick's really only matters in the context of the first-party policy. But that's not what we're talking about. We're talking about the Shecklers asking auto owners to defend them under the liability policy. And Hacker gets to this issue. We don't even get into this issue of co-insureds, right? They're not co-insureds under the liability policy, because the lease is so express that they retain all liability for their own negligence. But even if we wanted to get there, the liability policy contains the express exclusion that I already mentioned earlier, which is that there cannot be coverage for damage to your property you own, rent, or occupy. Thank you very much. May it please the Court. Usually the judge is looking at me, not the microphone. John Robertson for the Shecklers. I always hate being the appellee, because I have an argument prepared, and there are things I have to talk about. All of this discussion about abstract principles of duty to defend and eight corners, I'm not going there, because one thing I learned as a tank commander in Vietnam, if you're on firm ground, don't talk to me. If you're on firm ground, don't talk to me. Don't go play in the swamp. And I'm not going to go there, because Dix Mutual is determinative. The part of Dix Mutual that counsel keeps ignoring is the express holding that the public policy in Dix is that if the tenant, we meet the categories of Dix, they're supposed to be protected from damage to the property, including protection for their own negligence. Counsel, of course, in Dix, they talk about under the particular facts of that case, the tenant by paying rent has contributed to the payment. So don't we have different facts in this case? No, Your Honor, because in Dix, the payment went to pay for both the property and the liability insurance, which is exactly what happened in this case. If you look at the attachments to our brief, you'll see that there's only one policy, and there are multiple coverages. If you go and look at your homeowner's policy, it's the same thing. You have first party coverage, and then there are attached liability coverages. The tenant's policy, or the tenant's rent in this case, was intended to go into a fund that the landlord, who had 25 rental houses in the Pekin area, used to pay the premiums of all the policies as they came due. And do you disagree that the premiums were paid prior to any rent being paid? I think it's totally irrelevant, and the reason it's irrelevant is because the intent of the lease is what controls under Dix. The intent was that the tenant pays the rent, and it will be used to provide the coverage. When you have 25 rental houses in the Pekin area, 25 houses, the testimony of the landlord was that these 25 houses, the premiums would come up at different times. They'd pour the rents from the tenants into there. They'd keep the policies in force. That's what Dix stands for. Dix does not stand for any analysis applying the eight corner rules. Take the eight corner rule and apply it to Dix. It doesn't work. Dix is an expression of public policy of how we're going to handle cases where tenants have a lease, and we're going to have a lease that says that the landlord provides the protection for the property. The tenant's rents are used to pay the premium. Therefore, the tenant becomes a coinsured. If that's not the case, under her argument, the tenant in Dix is still on the hook. The tenant in Dix doesn't have liability protection because they're negligent. It has to cross over into the liability part of the policy. That's the policy inherent in Dix. I have a little problem with the reply brief. They suggest that there's never been a case in Illinois where these standard boilerplate rules about, I've been doing insurance law for a long time, the boilerplate rules for insurance, they don't apply in Dix. Dix is an expression of public policy. It's to prevent, in fact, it's virtually impossible for the tenant to buy the liability insurance to protect what they claim. That is the value of the building. So if the landlord agrees to provide the coverage, the tenants are entitled to the protection. In their reply brief, the one thing that Auto Owners does not do is discuss Dix. Oh, they kind of, Dix doesn't really apply here. Dix clearly is controlling here. This is not a complex case. I think when you boil it all down, what they're really suggesting is the Shecklers should not have the benefit of liability protection because this arose in a contribution context. And that somehow is different. Well, is it different? What Auto Owners sought to do in this case, and remember, I was in it from the beginning, I was hired by Grinnell Mutual to defend Mr. Workman, probably an apt name for a defendant in this case, Workman, and they sought to impose entire liability, joint and several liability entirely on Mr. Workman, who I could tell from the beginning was only minimally, if at all, responsible for this explosion and fire. So we filed a contribution action. Why a contribution action? We proposed filing something that would reduce the recovery for Auto Owners based on the Shecklers negligence, but they objected to that because it didn't fit in well with their keeping insurance out of the caption for the jury. How to say this? There's no jury instructions. There's no common law basis for saying that the tenants are the agent of the landlord. In a jury trial with common law principles, you can't get there. The only method for apportioning liability in this situation is a contribution case. It's the only thing that works. It's no accident. I've done a lot of insurance law. It's no accident that there's no amicus brief here by the insurance industry or IDC on behalf of Auto Owners. I believe in Dix, the court said that under limited circumstances, the tenant will be an additional insured, and all of those circumstances are satisfied here. The first is it was a residential lease for a house, and we attached exhibits to our briefs. To try and just show you in a highlight way what the documentation is. Two, the lease expressly required, unlike Dix, this is a stronger case than Dix, this lease expressly said the landlord would insure the property for fire or loss. The landlord is providing the protection. This is exactly what happened in Dix. And finally, the rent, the intent of the lease is that the rent be applied to pay, when due, the insurance premium. So now every lease, every rental property in the state of Illinois, where there's a residential lease, where the part of the lease says the landlord is going to get insurance to cover their losses, and someone's paying rent, then the tenant is now a co-insured. A co-insured, but only for the loss to the property. That's the other red herring in the argument. They cite a case where the tenant tried to stretch that into general liability for, I don't know, serving people intoxicating liquor or whatever the heck it was, but the bottom line is for damage to the property. So it's not an unknown risk. Auto owners set a premium for the coverages it provided, and that premium is the extent of their risk. It's defined, it's limited, and it's Dix. It's Dix all over. It just comes up in the context of a contribution act. Justice Holdridge wrote what I thought was the most eloquent concurrence I've ever read, because Justice Holdridge is essentially a conservative in terms of applying insurance policies. He said, I agree with the dissent in Dix, but I recognize that in this case, it is a controlling precedent. That may be the most eloquent statement I've ever heard from a court. And I, although I love the majority opinion that started out, kaboom, nonetheless, I think that says it all. The only other thing I will say is there's a suggestion that it keeps popping up. This wasn't a subrogation case. That was the basis for Judge McDade's dissent, and I have no idea where that came from. It's not in this record anywhere. Does the Court have any questions? It absolutely matters, because it is auto owners that's pursuing it as a subrogation case. Dix is a policy applicable to insurance companies when the landlord does a certain thing. So when the insurance company writes a premium on a rental house for certain coverages, they're also agreeing that the tenant will not be responsible for the tenant's negligence. It is not intended to convert this into a way to make Mr. Workman, who I lost my standing in the appellate court, because Mr. Wirtz and I made a mistake. We won the case. But Mr. Wirtz, who you're going to hear from now, actually helped win the case, because he argued very eloquently and protected the tenant. But, of course, the duty to defend is a little broader than the duty to defend. So don't confuse the fact that there's no indemnification with the fact that there was a duty to defend the Shecklers. In essence, your argument that the policy that you find inherent in Dix would rewrite the policy that we're talking about in this case? Well, it is a matter of public policy overriding all the fine print in these insurance policies and these house leases for people who don't have any money. Yes. Dix clearly is not based on any language in the policies that were involved. If you read Dix carefully, that was all argued. But Dix said, no, here's the public policy. When the landlord agrees to provide the insurance and the insurance company writes it, the tenant is protected against his negligence. Yes, but the equitable solution is one that this Court created 30 years ago in a 6-1 decision. That's what Dix says. That is the holding of Dix. It is not based on the fine print in the policy. It's based on an overriding public policy to keep these cases against tenants out of the court. I'll yield now to Mr. Wirtz. Thank you. Thank you. May it please the Court. My name is Mark Wirtz, and I represent the Shecklers. And I've been representing them for five years next month in this matter. They came to me in October of 2017. I recognized that Mr. Sheckler's brother went to high school with my brother and was a friend. And I later determined that I also went to high school with Mr. Sheckler. There was over a thousand students in my high school class, so we didn't know everyone. I listened to what happened. Later, of course, I researched the law, and I read the lease very carefully. It was clear to me, based on the precedent of this Court, not only in Dix, but going back to a 1955 decision, a Cerny-Pickus, that one looks at the lease and you look at the precedent, and that was the guiding light. Number one, this lease was stronger than Dix as far as placing responsibility on the landlord to obtain fire insurance. It also became apparent to me, under the deposition of McIntosh, which was taken prior to my involvement in the case, that he was using the rents to pay for the fire insurance. Those facts fit squarely in Dix and Cerny. Cerny was decided two years before I was born. It's been a long-standing principle of this Court, an equitable principle, that under those specific facts, and we're not extending it into Hacker. Hacker has nothing to do with this case. That involved a fall. This has to do with damage to the property under fire insurance coverage. And when I looked at Dix and I looked at Cerny, it became clear to me that my high school classmate and his wife were not going to be able to pay for the fire insurance. They were going to have to pay for the fire insurance, and the property should be co-insureds by auto owners, under the landlord's policy. And I wrote two letters to auto owners, tendering the defense of this case, and they flatly refused, which goes against totally the principles of Dix. So on we went to trial in the liability case of Dix and Cerny. And the jury came back with a verdict awarding auto owners nothing, and rightly so, because Mr. Workman didn't do anything wrong. He wasn't my client, but I made that argument, because he didn't do anything wrong. Ironically, one of the jurors on that case was a retired judge. He was not the foreman. So then we continue on with this part of the case, because this case is not moot, because there is, there's two obligations auto owners owes to their insured, and in this case, the co-insureds being the Shacklers, and that's one, the obligation to defend, and two, the obligation to indemnify had the Shacklers been found liable. Of course, they were, by virtue of the verdict as to Mr. Workman, they were not liable. But the, also in my research, it is clear that the duty to defend is broader than the duty to indemnify. And auto owners should have provided a defense, in other words, legal counsel for the Shacklers, but they didn't. And that's where I've stayed in. It's clear to me, if this Court looks at Dix, looks at the, you don't need, really don't need to look beyond Dix, but if you go back, you'll see that just the facts of this case fit squarely in Dix. And here I am in the trenches out there advising clients, and I have to rely, absolutely rely on the guidance of this Court. If a statute doesn't apply, or the Constitution doesn't apply. Yes? Dix makes it clear that we look at the lease. Yeah, we look at the lease. Dix is an equitable case. Justice Schmitt, who wrote the third district opinion here, who did insurance defense work, wrote a clear opinion. And when the attorney at the time argued about the rents being, the paid, the rents from being paid after the insurance policy was paid for, he told counsel, and is the oral argument, that that argument he found ridiculous, and that's the word Justice Schmitt used. I'm asking you to affirm Dix, because, again, being a lawyer out there in the trenches, we look to the guidance of this Court, and Dix was very clear as to the guidance. And the bottom line is... The tenants would be free from liability. The payments would what? I'm sorry? The tenant would not be responsible for the damage. I'll have to get my document, and I'm running short on time here, it looks like. It's not in the lease, it's in Dix. If you read the policy in Dix, all these defenses existed for Dix Mutual, but this Court overrode them as a matter of public policy. Counsel, this is Mr. Wirtz's argument. You may finish your answer to Justice Holdaway. Okay. The bottom line is the lease placed the responsibility for purchasing the fire insurance on the landlord. And Dix indicates that, along with the payment, are the rent payments being used to pay the landlord. And Dix's argument is that the lease placed squarely places the insurance company's responsibility to co-insure the shecklers. And I would like to, if I could point out, paragraph 33 in the late Justice Dan Schmidt's opinion in this case, I think is very important. May I read it quickly? Yes, please. Thank you. Adding insult to injuries, the shecklers have to pay costs and attorney fees to defend themselves in a suit initially brought by their insurer to recover damages under a policy which they are co-insureds. Again, this defeats the party's reasonable expectations under the lease and turns equity on its head. Finding that auto owners has a duty to defend its co-insured is the only reasonable mitigation against this observability under these facts. Thank you. Thank you very much. Thank you. I want to make two sort of evidentiary and appellate proceeding points right off the bat. There were several statements made during the argument that are not supported in the record, that we do not have designated evidence for, particularly procedurally in the case. Depositions that were referred to, and so while I don't think it impacts our argument at all, I just want to state that those, that that information provided certainly is not designated in the record. And the other point I just want to immediately dispel is that somehow we're afraid of DICS or we did not address DICS in the reply brief. We spent a considerable amount of time on DICS. DICS, again, we're not asking this Court to overturn DICS. I would argue that what the appellees are asking is for an incredible expansion of DICS. And that is to say that DICS simply applied longstanding Illinois law with regard to the following. Based on principles of equity, if a party is a coinsured, effectively an insured under the policy, the insurer cannot directly subrogate against them. That is, and again, subrogation is a matter of equity. Equally as longstanding Illinois law is the question of the duty to defend, which does not sound in equity. It is a question of law, and it is answered by principles of contract interpretation by looking at the policy language. And so in effect, what appellees ask this Court to do is to take DICS and really make it a wrecking ball as to that latter issue. That is, take the question of the duty to defend, throw out the fact that it's a question of law, and just lump everything into a question of equity. And that simply cannot occur. The duty to defend is absolutely broader than the duty to indemnify. That is correct. And that is because, and I want to explain that, that's because when a complaint is filed, it is, you don't have discovery, right? You don't have discovery, you don't know what's going on. And so there are times when you cannot know whether certain exclusions will apply, whether the discovery will result in there being a way to ultimately deny indemnity. And so the duty to defend, and again, this Court and Illinois courts have said, the complaint matters, the claims matter, the policy language matters. You take the allegations, and whether those are the complaint or whether those are counterclaim allegations, you take the pleadings, and you look at the language of the policy, you have to do both on the duty to defend. So absolutely, it's broader than the duty to indemnify. And again, this arises in general liability policies all of the time. When you have an exclusion that applies on the face of the complaint, in other words, the damages sought on the face of the complaint, or for a property owned, rented, or occupied by an insurer, then you can deny, then you can absolutely deny the claim across the board. And you can deny the duty to defend, because on the face of the complaint and on the face of the policy, there is, there's going to be no coverage. This is excluded. I have to point out that the appellees do not want to address the question of the duty to defend. And what's interesting is that during the arguments, though, they make comments such as there might not be a duty to indemnify because of an exclusion, but the duty to defend is broader, and so there is a duty to defend. All of that arises under the liability policy. And so it absolutely is important to look at the differences in the first-party dwelling property coverage and the landlord liability policy, because there is, they did not assume, or in the lease, there is nothing to say that they get the protection of the landlord's liability policy. That is expressed in the lease. The one thing that is absolutely expressed in the lease is that they retain liability to third parties for their own negligence. And so with regard to the claim for contribution and with regard to their submission of the duty to defend, there is just absolutely nothing in either the lease or the third-party landlord liability policy that provides them coverage. There simply is not. With regard to Dix and its application to this particular case, again, we certainly like the dissent of Justice McCade, only because we think it does exactly what the right answer is here. It shows us why Dix is so distinguishable, and that's because Dix limited itself to a very specific set of facts. Dix looked at the lease, which had maybe three sentences in it, and Dix also looked at the rent payments. And here we have different terms of the lease, but we also do not have the same set of facts as the rent payments. And so in those ways, I actually don't think that Dix is applicable, as the appellees think. But, and I don't mean to beat a dead horse, I think we can step away from Dix. I really, really do. Dix does not address a landlord liability policy. It does not address liability in any way. It does not address the duty to defend. Justice McCade acknowledged all of that, understood that, and said, why are we saying that Dix is controlling? Dix isn't controlling. Dix was a direct subrogation by the insurance company against a tenant. And while we actually disagree that sort of we can extend some of those principles of co-insuredness, regardless of whether or not the Dix would operate to say that the Shecklers are co-insured under the first party policy, Dix didn't have anything to do with whether or not under a liability policy there would be additional, the tenants would be insured. I do want to briefly note, we think HACR is very important. I know it was dismissed by the appellees, and I don't understand how, because it could not be more directly relevant to the question of the duty to defend. There you had a landlord, you had a tenant, you had a landlord liability policy, and when the tenant tendered to the landlord, liability policy, to the insurance company for the landlord liability, the insurance company declined. And the court in HACR said, the tenant is not a co-insured under the landlord liability policy. In fact, absent express language in the lease saying that they are going to be on that liability policy, they're not a co-insured. We, not only do we not have express language in this lease saying that, we have express language in this lease that says the tenants are responsible. They have the liability. If they need to go out and get renter's insurance, they can absolutely do so. But that is not what happened here. And so I do think that HACR is relevant. And HACR is also relevant, because again, it puts Dix where it should be. Dix is a question of equity about first party insurance, about direct subrogation, and limited to the particular facts of that case, which are different than the facts of our case. And HACR says, but none of that, equity, first party, none of that is applicable when we're talking about landlord liability policies, when we're talking about third party liability. And what we have here is the HACR's third party liability to Mr. Workman. Regardless of what happened at the trial court level, and whether a jury thought that Workman, Mr. Workman caused some of the damage or not, the reality is that there's a situation where Mr. Workman could have been injured, or there are lots of situations where he could have still brought the same claim for contribution, and the Shecklers would not have the power to do that. And so, I will just conclude by saying, it is absolutely imperative that this court understand what the third district said was unavailing, that we cannot move forward in a world where the language of the policy doesn't matter. The language of the policy cannot be unavailing, because just as the appellee's attorney said that he looks to Dix, the insurance industry would be turned on its head if policy language was, in fact, unavailing. Thank you. Case number 28012, Monroe Sheckler v. Auto Owners Insurance Company, will be taken under advisement by this court as agenda number 19. Thank you, Ms. Dunbiner, for your argument this morning, Mr. Robertson, and Mr. Wirtz as well. Thank you.